| | | |
|---|---|---|
| JACQUELINE A. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 2028 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jacqueline Watkins, a Chicago police officer, alleges that her employer discriminated against her on the basis of her race (African American) and gender (female).[1] R. 18, Am. Compl.[2] In her Amended Complaint, Watkins advances a number of legal theories, all more or less based on the allegation that, in 2008, her supervisor filed a false complaint register against her and that the City did not properly handle Watkins's grievances against the complaint register. *Id.* The City moves to dismiss the complaint, arguing that most of the conduct Watkins complains of is outside the scope of the EEOC charge filed pre-suit, and that her complaint fails to state a claim upon which relief could be granted. R. 24, Def. Br. For the reasons discussed below, the City's motion is granted in part and denied in part. Some of the claims are indeed outside the scope of the EEOC charge, though

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the Illinois law claim under 28 U.S.C. § 1367.

[2]Citations to the docket are indicated by "R." followed by the docket entry and page or paragraph number.

some fit comfortably within the charge (or it is not yet possible to tell whether dismissal is required). And some of Watkins's theories plausibly state a claim to relief, so her legal claims based on those theories survive.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Watkins is a female African-American police officer who has been working as a patrol officer for the Chicago Police Department since 1999. Am. Compl. ¶ 4. The events giving rise to this case began in September 2008, when Watkins's then-supervisor,[3] Sergeant Francis Higgins, filed a complaint register (CR) against Watkins. *Id*. ¶ 11. Among other things, a CR is a way of initiating discipline within the Chicago Police Department. *See id*. ¶¶ 9, 13. If sustained, a CR can lead to serious disciplinary action, including suspension, denial of promotion, denial of transfer, and possible termination. *Id*. ¶ 13. Watkins asserts that the CR filed against her by Higgins was intentionally false and motivated by her race and gender. *See id*. ¶ 11; Am. Compl. Exh. A.

---

[3]The amended complaint is a little unclear about whether Higgins was Watkins's supervisor at the time he filed the CR. *Compare* Am. Compl. ¶ 11 ("Plaintiff had previously asserted that the CR#1019842 action attributed to her on September 9, 2008 *by a prior supervisor*, Sergeant Francis Higgins, was an intentionally false, malicious, defamatory, slanderous and racially motivated act.") (emphasis added) *with* Am. Compl. ¶ 10 ("[W]hen a CR appears on an officer's personnel record, [] this is considered a serious disciplinary action, especially when it is an internal complaint *brought by an officer's supervisor*.") (emphasis added). Watkins's response brief clarifies that Higgins was her supervisor at the time of the CR. R. 25, Pl. Resp. ¶ 2.

Watkins immediately filed a complaint of race and gender discrimination with the Illinois Department of Human Rights. Am. Compl. ¶ 14. The IDHR allegedly refused to accept Watkins's complaint, and told her that a complaint could not be filed or investigated unless some punishment or employment detriment occurred as a result of the CR. *Id.*

At some point (the complaint is unclear on when),[4] Watkins complained to the CPD's Internal Affairs Division that Higgins had filed a false CR against her due to her race and gender.[5] Am. Compl. ¶ 16. Watkins alleges that Internal Affairs took an "uncharacteristically" long time—two years—to begin investigating her complaints, and then took a total of six years to complete its investigation. *Id* ¶ 17. This investigation took much longer than investigations of other complaints filed by Watkins. *Id.* Watkins believes that the long delays were an attempt to prevent her from filing timely discrimination charges, and to protect Higgins from reprisal. *Id.* ¶¶ 17-18. At some point, an Internal Affairs investigator, Sergeant Kane,

---

[4]The pertinent allegation says that "Plaintiff *simultaneously* filed a complaint that Sergeant Higgins … intentionally made a false report against her and that it was motivated by racial and gender animus." Am. Compl. ¶ 15 (emphasis added). This allegation immediately follows the allegation that Watkins filed an IDHR charge in 2014, which would suggest that Watkins complained to Internal Affairs in 2014. *See id.* ¶ 14. But later in the complaint, Watkins says that Internal Affairs took at least six years to investigate her allegations against Higgins, indicating that the Internal Affairs complaint *must* have been filed earlier than 2014. *See id.* ¶ 17. Perhaps "simultaneously" is referring back to Watkins's allegation from two paragraphs above in the amended complaint, where she asserts that she filed her first IDHR charge "immediately" after the CR was issued. *Id.* ¶ 14.

[5]Watkins also alleges that she complained of the alleged discrimination to her union, the Fraternal Order of Police, but that the union failed to respond to at least one of her grievances. Am. Compl. ¶¶ 16, 22, 55. The Fraternal Order of Police is not a defendant, so Watkins's allegations about the union's unresponsiveness to her complaints are not relevant to this case. Watkins's conclusory statement that "in her opinion, the union was biased and colluding with Defendant's CPD management," *id.* ¶ 55, is not enough to connect Watkin's failed FOP grievance (or grievances) to her claims in this case.

"excoriated" Watkins for bringing allegations of race and gender bias against Higgins. *Id.* ¶ 21. In October 2011, Kane found the CR filed by Higgins to be "sustained," and recommended that Watkins be suspended for two days. Am. Compl. Exh. C at 1. Sometime later (the complaint does not say when), the Chief of Internal Affairs, Juan Rivera, documented the CR as sustained and submitted it to then-Police Superintendent Garry McCarthy for approval.[6] Am. Compl. ¶ 24.

In March 2014, Watkins was suspended by Sergeant Ronald Wilkerson, who told her that the suspension was based on the CR filed by Higgins in 2008. Am. Compl. Exh. A. (It is unclear what happened between 2011 and 2014; perhaps the CR was undergoing further review, but the complaint does not say.) Watkins filed another charge of discrimination with IDHR, alleging again that Higgins issued the CR because of Watkins's race and sex, and adding the allegation that the March 2014 suspension was motivated by race, sex, and a desire to retaliate against Watkins for engaging in protected activity. Am. Compl. ¶ 15; Am. Compl. Exh. A.

In December 2015 (again, the complaint does not say what happened in the intervening time, though perhaps nothing happened), an arbitrator found that the CR should not have been sustained. Am. Compl. ¶ 25; Am. Compl. Exh. C. The arbitrator ordered that Watkins's suspension should be set aside, that Watkins's record should reflect that the CR was not sustained, and that the suspension should not be part of her record. Am. Compl. Exh. C at 4.

---

[6]The complaint incorrectly states that McCarthy's first name is Joseph. Am. Compl. ¶ 24.

Despite the arbitrator's finding, the CR has remained on Watkins's record. Am. Compl. ¶ 25. Watkins has made numerous attempts to have the CR "expunged," but these attempts have been unsuccessful. *Id.* ¶¶ 54, 27. Watkins states that having the CR on her record has prevented her from advancing in her career. She alleges that she was denied a promotion to detective in December 2016, and was denied the same promotion again in February 2017.[7] *Id.* ¶¶ 8-9. Watkins also attributes the lost promotion opportunities to retaliation for her prior complaints of race and gender discrimination. *Id.* ¶ 8. In addition to the failed promotion attempts, Watkins says that her performance review rating has been lowered recently. *Id.* ¶ 29. She attributes this to retaliation and discriminatory animus. *Id.*

Apart from these factual allegations, Watkins makes a number of accusations of racial and gender bias, but the allegations are conclusions without factual content. For example, she assets that during her employment, she was "[s]ubjected to harassment by employees and managers due to race and gender, which was condoned by the Defendant" and "[s]ubjected to a racially harassing, hostile and intimidating employment environment." Am. Compl. ¶36. Watkins also claims that the police department is biased against *all* non-white employees, but these allegations are not backed up by any concrete facts or examples. *See, e.g.*, *id.* ¶ 45 ("[Plaintiff] and other minority employees are routinely … subjected to harsher

---

[7]Defendant argues that there was only one lost promotion to detective: Watkins applied in December 2016, and found out that she had been denied in February 2017. Def. Br. at 2 n.1. It does not much matter for the analysis, but the complaint appears to imply that there were two separate denied promotions, *see* Am. Compl. ¶¶ 8-9, and the complaint must be taken as true and read in the light most favorable to Watkins.

discipline for similar behaviors than their white counterparts"), ¶ 5 (noting the existence of a Department of Justice report finding a "pattern and practice of racist behavior" at the police department).

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[8] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to

---

[8]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

### A. Title VII

#### 1. IDHR/EEOC Charges

The first of many problems with the Amended Complaint is that Watkins failed to file a charge with the Equal Employment Opportunity Commission for at least some of her Title VII claims. Filing a charge with the EEOC is a necessary precondition to filing civil claims under Title VII. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015). If the aggrieved individual first files with a state or local agency, then the EEOC charge must be filed within 300 days of the alleged unlawful employment practice, or within thirty days of the state or local agency's termination, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1). Failure to file a timely EEOC charge is an affirmative defense, and a plaintiff need not plead around an affirmative defense. *See Salas v. Wis. Dept. of Corrections*, 493 F.3d 913, 921 (7th Cir. 2007); *Kawcynski v. F.E. Moran, Inc., Fire Protection*, 2015 WL 3484268, at *2 (N.D. Ill. June 1, 2015). But a plaintiff can plead herself out of court by "alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir. 2003); *see also Indep. Trust Corp. v. Stewart Info. Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.").

In this case, Watkins alleged that she filed or attempted to file two charges with the Illinois Department of Human Rights (which would be cross-filed with the EEOC as a matter of course, *Collier v. City of Chi.*, 2010 WL 476649, at *3 (N.D. Ill. Feb. 4, 2010); *Marlowe v. Bottarelli,* 938 F.2d 807, 809 (7th Cir. 1991)). The first attempt was in 2008,[9] when Watkins complained of Higgins's alleged race and gender discrimination to the IDHR. The second charge was filed in 2014 (this time successfully). The Court will consider each in turn.

### a. The 2008 Charge

Watkins alleges that she attempted to file a charge of race and gender discrimination in 2008 immediately after Higgins filed a false CR against her. Am. Compl. ¶ 14. She asserts that the IDHR told her that "unless there was some punishment or other employment detriment that ensued as a result of this action, the complaint could not be filed and investigated." *Id*. Taking this allegation as true (as the Court is required to), the IDHR prevented Watkins from filing a timely administrative charge by mistakenly telling her it could not accept the charge unless some more tangible employment detriment occurred. Misleading conduct by an administrative official which prevents a plaintiff from filing a timely EEOC charge can be the basis for equitable tolling of the administrative statute of limitations. *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992) (EEOC's erroneous representation that plaintiff's completion of intake

---

[9]It is not explicit in the complaint when the charge was filed, but Watkins alleges that it was filed "immediately" after the CR was issued on September 9, 2008. Am. Compl. ¶¶ 11, 14.

questionnaire fulfilled his administrative responsibilities tolled the 300-day time limit for filing a charge); *see also Anderson v. Unisys Corp.,* 47 F.3d 302, 306-07 (8th Cir. 1995); *Wilson v. Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995); *Martinez v. Orr*, 738 F.2d 1107, 1111-12 (10th Cir. 1984). The question then becomes whether the plaintiff asserted her rights "as early as [she] realistically could given [the] misinformation." *Early*, 959 F.2d at 81.

At this stage, it is not clear whether Watkins's charge of discrimination based on the 2008 CR was untimely. Equitable tolling is a fact-intensive inquiry, more appropriate for summary judgment or an evidentiary hearing than a motion to dismiss. *See Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) ("The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis.") (cleaned up). Watkins alleges that an IDHR representative told her that she could not file a charge until she was punished for the CR. Consistent with that representation, Watkins waited until she was suspended and filed again, alleging that the CR was false and discriminatory. Watkins thus alleges that she followed the instruction of the IDHR, and if she did, then perhaps waiting to file was a reasonable thing to do (though the Court cannot be sure without more facts). *See Sarsha v. Sears Roebuck and Co.*, 747 F. Supp. 454, 456 (N.D. Ill. 1990) ("The IDHR investigator was someone whom [the plaintiff] could objectively reasonably rely upon to be knowledgeable on the proper filing procedures. It was therefore reasonable for [the plaintiff], as he did, to rely upon the IDHR investigator's instructions and follow them."). It is not clear precisely why six

years passed between the alleged discrimination and the filing of the IDHR charge. But that delay might have been due more to the very slow Internal Affairs investigation than to any dilatoriness on Watkins's part. *See* Am. Compl. ¶ 17. The point is that, without some additional factual development—and, eventually, an evidentiary hearing—the Court cannot hold that as a matter of law equitable tolling does not save Watkins's Title VII claims based on the filing of the 2008 CR.

### b. The 2014 Charge

Watkins's next attempt to file a charge of discrimination went more smoothly. The IDHR accepted her 2014 charge and conducted an investigation. Am. Compl. ¶ 15. The outcome of this investigation was not favorable to Watkins, *id.*, and the EEOC (which adopted the IDHR's finding), issued a right to sue letter on December 16, 2016. Am. Compl. Exh. A. Watkins filed this lawsuit on March 15, 2017, within the statutory ninety day window. *See* 42 U.S.C. § 2000e-5(f)(1). This means that any claims related to the 2014 charge are timely and have been properly exhausted. But some of Watkins's claims are *not* within the scope of the 2014 charge, as will be discussed below.

### 2. Disparate Treatment

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of race, sex, and other protected characteristics. *See* 42 U.S.C. § 2000e-2. To succeed on a Title VII disparate-treatment claim, a plaintiff must allege that an employer took a materially adverse job-related action against her, and that the action was motivated by intentional discrimination. *Alamo v.*

*Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). In Title VII cases, the connection between the plaintiff's membership in a protected class and the adverse action—that is, the discriminatory intent—can be alleged in general terms. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Leuvano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013).

### a. The 2008 CR

Watkins alleges that the 2008 CR initiated by Sergeant Higgins was motivated by Watkins's race and gender. Watkins has alleged enough well-pleaded facts to state this claim, especially considering the supporting materials she attached to her complaint. The amended complaint states that on September 9, 2008, Watkins's then-supervisor, Sergeant Higgins, initiated a CR against her. Am. Compl. ¶ 11. The CR charged that Watkins failed to respond to a burglary-in-progress call in a timely manner. *Id.* ¶ 20. Watkins says that this charge was completely false, and alleges that the subsequent arbitration decision (which held that the CR should not be sustained) confirms that the charge was without merit. *See id.* ¶¶ 11, 43. She claims that Higgins intentionally filed a false report because of racial and gender animus. *Id.* ¶¶ 11, 16; Am. Compl. Exh. C at 2. All this is enough to state a claim of intentional racial discrimination.

The City argues that the opening of the CR was not an adverse employment action that could support a claim of employment discrimination. Def. Reply at 5-6. It is true that "mere inconvenience[s]" do not qualify as materially adverse employment actions. *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th

Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). But, taking Watkins's allegations as true, the issuance of a CR is not a mere inconvenience. Watkins alleges that a CR is considered "a serious disciplinary action," especially when brought by the officer's supervisor. Am. Compl. ¶ 10. The complaint makes clear that a CR can have serious negative employment consequences, including suspension, denial of promotion or transfer, and possibly termination. *Id.* ¶ 13. Indeed, Watkins alleges that the CR in this case resulted in a suspension and prevented her from being promoted. *Id.* ¶¶ 9-10; Am. Compl. Exh. A. Based on these allegations, it is clear that a CR can be the kind of employment action "which visits upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (cleaned up); *see also Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001)) (explaining that reprimands that lead to consequences like "ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities" could be adverse actions).

The City argues that "one reversed CR cannot affect the merit promotion process," Def. Br. at 4, but this argument contradicts the factual allegations in the complaint, and must be disregarded for now. Watkins alleges that it is "a customary practice for meritorious promotions to be denied when a CR appears on an officer's personnel record." Am. Compl. ¶ 10. Taking that allegation as true and reading it in the light most favorable to Watkins, one CR *can* prevent a merit-based promotion,

and therefore has immediate, tangible employment consequences.[10] On the facts as alleged by Watkins, the filing of the allegedly false CR could support a claim of intentional employment discrimination.[11] To be sure, she ultimately will bear the burden to prove the facts underlying this claim, but it survives for now.

### b. 2014 Suspension

The next plausible disparate-treatment claim is based on Watkins's 2014 suspension. In the IDHR charge attached to Watkins's complaint, Watkins alleges that she was suspended in March 2014 based on the false 2008 CR. She says that Sergeant Ronald Wilkerson suspended her based on the CR, and that white or male employees accused of similar misconduct were not disciplined in this manner.[12] Am. Compl. Exh A. Although threadbare, these allegations are enough to state a claim of discrimination under Title VII. Watkins's charge states that she was subjected to an adverse employment action—suspension—because of her race and gender. *See, e.g.,*

---

[10]The City asserts that the job posting that Watkins attached to her complaint demonstrates that "only multiple sustained CRs count against a nomination for merit promotion to detective." Def. Br. at 4. That is wrong. The job posting states that certain CR investigations are automatically disqualifying, but does not say that no other CRs will be considered. To the contrary, it notes that "Nominees with pending grievances or Police Board cases concerning discipline may be nominated; however, the scope and type of the allegations will be considered and may be a factor in non-selection." Am. Compl. Exh. E. If anything, the job posting lends more credence to Watkins's assertion that having a CR appear on an officer's record could affect the promotion process.

[11]This is assuming that Watkins's inclusion of the 2008 CR in her 2014 IDHR charge was timely. As discussed, that is a question of equitable tolling.

[12]The City argues that the suspension is not an adverse employment action because Watkins did not allege that the suspension was served. Def. Br. at 8. But this is not at all clear from the complaint. Watkins says she was suspended in 2014, Am. Compl. ¶ 15, Am. Compl. Exh. A; a fair inference from that statement (which Watkins is entitled to at the motion to dismiss stage) is that she served the suspension.

*Hopkins v. Bd. of Ed. of City of Chi.* 73 F. Supp. 3d 974, 987 (7th Cir. 2014) (suspension "plainly" qualified as adverse action). That is all that is required.

### 3. Retaliation

To state a claim for retaliation under Title VII, a plaintiff must allege that she engaged in protected activity and was subjected to adverse employment action as a result of that activity. *Luevano*, 722 F.3d at 1029. Filing a complaint of race or gender discrimination is a protected activity. *See id*; *Tomanovich v. City of Indianapolis¸* 457 F.3d 656, 663 (7th Cir. 2006). In the retaliation context, "adverse employment action" means an action that would dissuade a reasonable worker from engaging in protected activity. *Chaib v. Indiana,* 744 F.3d 974, 986-87 (7th Cir. 2014), *overruled on other grounds, Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Watkins alleges that her employer retaliated against her for complaining about race and gender discrimination in a number of ways, but not all are viable claims.

### a. The Police Department's Handling of the CR

Watkins argues that the police department's handling of the CR—spanning from 2008 until the present—was intended to retaliate against her for complaining of race and gender discrimination. Specifically, she alleges that Internal Affairs took an inordinately long time to investigate her claim that the CR was false and discriminatory, Am. Compl. ¶ 17; that the Internal Affairs investigation was not "thorough, full and impartial," *id*. ¶ 19; that one of the investigators, Sergeant Kane, "excoriated" her for accusing Higgins of bias, *id*. ¶ 21; that the CR should not

have been recorded as sustained because three of the four officers who investigated determined that it was not sustained, *id.* ¶¶ 23-24; and that the CR has inexplicably remained on her record to the present day despite the arbitrator's determination that the CR should not appear as sustained on her record, *id.* ¶¶ 9, 25. Watkins attributes all this to retaliatory motive. *See* Am. Compl. ¶¶ 53-54.

Watkins might have had a valid retaliation claim based on some or all of these events, but she has pleaded herself out of court by attaching her 2014 IDHR/EEOC charge, which shows that she did not present these claims to the EEOC. Although "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint," her civil claims must at least be "like or reasonably related to the allegations of the charge." *Cheek v. W. & So. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original).

Unfortunately for Watkins, the 2014 IDHR charge does not even hint at the series of events described above. Instead, it points to only two discrete events: Sergeant Higgins's filing of the false CR in 2008, and Sergeant Wilkerson's March 2014 suspension of Watkins. The IDHR charge does *not* allege that Internal Affairs improperly delayed its investigation of the controversy over the CR, or complain that the investigation was unfair. Nor does it identify Sergeant Kane as a

perpetrator of retaliation or argue that the CR was recorded improperly. The allegations about the handling of the CR are simply too far afield of the EEOC charge to qualify as "reasonably related." *See Cheek*, 31 F.3d at 500. The point of requiring employees to file charges with the EEOC is to give the EEOC and the defendant a chance to settle the dispute without litigation, and to put the employer on notice of the conduct about which the employee is aggrieved. *Id.*. The charge in this case would not have been enough to put the City or the EEOC on notice that Watkins was complaining about the fairness of the investigation into the CR, or the conduct of Sergeant Kane.

What's more, some of the events Watkins points to as retaliatory happened *after* the filing of the 2014 charge. The arbitrator's decision that the CR should not be sustained happened in December 2015, for example; and the refusal to remove the CR from Watkins's record (as required by the arbitrator's opinion) obviously happened after that. *See* Am. Compl. ¶ 25; Am. Compl. Exh. C. These are discrete events that did not take place until over a year after the 2014 charge was filed, so they are clearly not within the scope of the charge. So, to the extent that Watkins's retaliation claim is based on the alleged mishandling of her Internal Affairs complaint or the police department's failure to comply with the arbitrator's decision, that claim has not been presented to the EEOC, and cannot be brought in a civil suit.

### b. 2014 Suspension

Watkins's 2014 suspension by Sergeant Wilkerson, on the other hand, *was* clearly raised in Watkins's 2014 IDHR charge. *See* Am. Compl. Exh. A. The IDHR charge provides enough factual detail about the suspension to state a claim: Watkins was suspended by Wilkerson in 2014, the suspension was a harsher punishment than white male officers received in similar circumstances, and the suspension followed Watkins's participation in a protected activity (presumably, her complaint that the CR was discriminatory)[13] "within such a period of time as to raise an inference of retaliatory motivation." Am. Compl. Exh. A. It is true that the allegation about timing is conclusory, but when read along with the other allegations in the amended complaint (which suggest that the investigation into Watkins's allegations of gender bias would have been ongoing in 2014[14]), there are enough well-pleaded facts to state a plausible claim that the 2014 suspension was retaliatory.

### c. Failure to Promote; Lowered Performance Review

Watkins also alleges that she was denied a promotion to detective twice, and that her performance evaluation was recently lowered. Am. Compl. ¶¶ 8-9, 29. She

---

[13]The City argues that Watkins's complaints are not protected activity, Def. Br. at 7, but this argument is without merit. The complaint was not merely "about a CR," as the City says; her complaint was that Higgins filed the CR *because of racial and gender animus. See* Am. Compl. ¶¶ 11, 14, 16; Am. Compl. Exh. A. That is clearly a complaint of discrimination based on protected characteristics and is protected activity.

[14]Plaintiff alleges that the investigation of her complaint into Higgins lasted either six or eight years (the phrasing is ambiguous). Am. Compl. ¶ 17. If Watkins initiated the complaint around September 2008, which seems to be the case, *see* Am. Compl. ¶¶ 14, 16, then the investigation would have been ongoing or very recently completed in August 2014.

sees these events as "further evidence of harassing and retaliatory behavior" by her employer. The problem is that the lost promotions and the lowered performance rating occurred well after the 2014 IDHR charge was filed, so they are not included in the charge. What's more, Watkins does not even allege that the same individuals were involved in the performance review, the promotion decisions, and the suspension, so it is difficult to see how the events would be reasonably related to the conduct described in the IDHR charge. These allegations are not properly before the Court because they have not yet been presented to the EEOC.

### 4. Hostile Environment/Harassment

Watkins's next Title VII theory is that the Chicago Police Department allowed or condoned racial or gender-based harassment, which created a hostile work environment for Watkins. *See* Am. Compl. ¶¶ 36-41. To state a Title VII hostile work environment claim, a plaintiff must allege that (1) she was subject to unwelcome harassment; (2) the harassment was based on a protected characteristic, such as race or gender; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.,* 361 F.3d 421, 426 (7th Cir. 2004) (quoting *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)). But Watkins's allegations of a hostile environment are completely conclusory. She has alleged the *legal elements* of a hostile work environment claim—that she was harassed based on race and gender, that a hostile environment was created, and that her employer condoned it—but these legal

18

conclusions are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678-79.

The closest Watkins comes to stating actual *facts* in support of her hostile environment claim is her allegation that she was teased by her colleagues for failing to respond to a dispatch (the offense charged by the false CR). Am. Compl. ¶ 55. But that is not race- or gender-based harassment; it is harassment based on Watkins's perceived disciplinary record. And even if Watson had plausibly alleged that the teasing was related to her race or gender, none of her allegations suggest that it was severe or pervasive enough to create a hostile work environment. Title VII is not a "general civility code;" only harassment severe enough to render the work environment abusive is actionable. *Oncale v. Sundower Offshore Servs.. Inc.*, 523 U.S. 75, 80 (1998); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). There are no facts whatsoever in the complaint to support a claim that Watkins was subjected to that level of severe and pervasive racial or gender-based harassment. This is not to suggest that the law requires fact pleading. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002). But Watkins must allege *some* facts in order to render her claims plausible and give the City notice of the conduct she is complaining about. *See id.* at 514. For the harassment claim, she has not done so.

Even if Watkins had stated a claim, however, she would still be out of luck: the harassment claim also was not presented to the IDHR, so it must be dismissed for that reason as well.

### 5. General Allegations of CPD Discrimination

Watkins also argues that *all* minority employees of the CPD are discriminated against in a variety of ways. It is unclear whether she is alleging systematic intentional discrimination or that CPD employment practices have disparate impact on nonwhite employees. To make out a claim of an intentional pattern or practice of discrimination, a plaintiff must allege that "an employer regularly and purposefully discriminates against a protected group" such that "discrimination was the company's standard operating procedure." *See Puffer v. Allstate Ins. Co.* 675 F.3d 709, 716 (7th Cir. 2012) (cleaned up). For a disparate impact claim, on the other hand, a plaintiff must "isolat[e] and identify[] the specific employment practices that are allegedly responsible for any observed statistical disparities." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994 (1988). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson,* 544 U.S. 228, 241 (2005).

Whatever theory Watkins is advancing, her complaint fails to state a claim upon which relief can be granted. Like Watkins's hostile-environment claim, Watkins's claims about the CPD's general discriminatory practices are supported entirely by vague legal conclusions rather than well-pleaded facts. For example, she alleges that minority employees "are routinely, disproportionately and improperly subjected to harsher discipline … than their white counterparts"; that minority officers "are placed on performance improvement plans without any clear

articulation of performance deficiencies"; and that African-American officers "are frequently placed in lower level paid positions than white, less educated and less experienced officers." Am. Compl. ¶ 45. But these allegations merely state the conclusion that discrimination exists, without alleging even the basics of the *who*, the *what*, and the *how*. Watkins does not say which officials or what policies cause the discrimination, how the discrimination operates in practice, or even give anecdotal examples of the alleged disparities (apart from Watkins's own experience). This is not enough, especially to support complex claims of institution-wide intentional discrimination or disparate impact. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012) ("[U]nder *Iqbal* and *Twombly*, the required level of factual specificity rises with the complexity of the claim") (quoting *McCauley v. City of Chi.*, 671 F.3d 611, 616-17 (7th Cir. 2011)) (cleaned up).

Finally, even if Watkins had pled enough facts to state a claim of CPD-wide discrimination, those claims too would be improper because they were not included in the 2014 IDHR charge. The City's motion to dismiss these claims is granted.

## B. 42 U.S.C. § 1983

Next, Watkins asserts a claim under 42 U.S.C. § 1983. To start with, it is not clear what Watkins's theory of liability under Section 1983 is. On one hand, it looks like she might be alleging a different version of her various race and gender disparate-treatment claims; but it is also possible that Watkins is trying to bring some kind of due process claim based on the handling of her complaints about the

CR. *See* Am. Compl. ¶ 48 ("Defendant … has intentionally and maliciously discriminated against Plaintiff under color of law"); *id.* ¶ 56 ("Defendant also violated Plaintiff's due process rights in handling her complaints of discriminatory treatment."). But here again, it does not matter what particular theory or theories Watkins is pursuing, because her claim fails either way. The only defendant in this case is the City of Chicago, and a city can only be liable under Section 1983 "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009); *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978).

Watkins has alleged no facts that would support any of the three theories of municipal liability. There is no allegation in the complaint that any official policy caused the problems she complains of. There are also no facts sufficient to state a claim of a widespread and well-settled custom that led to the alleged violations of Watkins's rights. As discussed above, Watkins's allegations of poor treatment of African-American officers are too vague and conclusory to count as well-pleaded facts. Finally, there is no allegation that any of the alleged rights violations were caused by an individual with final policymaking authority. The complaint does state that the Chief of Internal Affairs, Juan Rivera, documented Watkins's CR as sustained. Am. Compl. ¶ 24. But no fact allegations suggest that Rivera was a final policymaker (or, for that matter, suggest that Rivera knew that the CR was false

and discriminatory). Watkins also alleges that Rivera submitted the CR to Police Superintendent Garry McCarthy for final approval. *Id*. McCarthy might well have been a final policymaker, but the Amended Complaint does not allege that he actually *did* anything—only that Rivera submitted the CR to him. *Id*. The Amended Complaint does not even allege that McCarthy approved the sustained CR.[15] *Id*. With McCarthy the only possible final policymaker in sight, the last basis for *Monell* liability against the City of Chicago fails too. Watkins has therefore fallen short of stating a plausible claim for relief under 42 U.S.C. § 1983.

## C. Breach of Contract

Watkins's final claim is a claim of breach of contract under Illinois common law. This claim consists of a single paragraph of vague assertions about the alleged contract between Watkins and her employer. Am. Compl. ¶ 56. Watkins states that the City breached its contractual "duty" to "subject Plaintiff to equitable and reasonable terms and conditions of employment relative to non-minority and non-female employees."[16] *Id*. This claim too fails for want of any factual support. Watkins does not say how her employment contract was formed, who the parties were, or what contractual provisions gave rise to the duty Watkins identifies. She just says that the contract existed, that the contract was valid and enforceable, and

---

[15]The allegations about McCarthy are even weaker as characterized in Watkins's response brief: there she states only that Rivera "informed" McCarthy that the CR had been sustained. Pl. Resp. ¶ 21.

[16]The same paragraph states that the City violated Watkins's due process rights. Am. Compl. ¶ 56. But the guarantee of due process of law comes from the Fourteenth Amendment, not any employment contract, so due process claims should be asserted under Section 1983 or some other mechanism for bringing federal constitutional claims, not Illinois contract law.

that the City breached a contractual duty not to discriminate. Those allegations merely restate the elements of breach of contract under Illinois law. *See Van Der Molen v. Wash. Mut. Finance, Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (reciting the elements of breach of contract). If Watkins wants to rely on Illinois common law for relief, then she needs to allege the *facts* that would enable her to plausibly make that claim rather than simply stating the conclusion. The breach of contract claim is dismissed.

### D. The City's Motion to Strike

Watkins's response to the City's motion to dismiss mostly repeated the factual allegations in her complaint, with some minor added facts. For example, Watkins expanded on her allegation that the IDHR refused to accept her 2008 charge by providing the name of the IDHR investigator who allegedly refused the charge and giving the control number of the charge. Pl. Resp. ¶¶ 5-6. The response also alleged some completely new facts—for instance, that the Chicago Police Department has a policy of utilizing progressive discipline. *Id.* ¶ 15. Watkins also attached a few new exhibits to the response brief, including a letter granting a FOIA request for complaint registers naming Watkins. *See* Pl. Resp. Exh. H. The City moves to strike these new facts and exhibits.

The City's motion is denied as unnecessary. To the extent that the new allegations attempted to explain Watkins's administrative exhaustion efforts, those allegations are not necessarily improper, because Watkins is not required to plead those facts in the first place. To the extent that Watkins tried to add other new

facts, those were disregarded in the Court's consideration of the motion to dismiss. It is true that a plaintiff cannot amend her complaint in her response brief, and that is arguably what Watkins has tried to do by using her brief to allege new facts and provide new exhibits. But in any event, the new allegations and exhibits would not have helped Watkins's arguments. They were mostly irrelevant or, at best, minor expansions of the allegations already made in the complaint. The fact that Watkins's disciplinary record is available to public via FOIA requests, for example, does not add anything to her claims. Similarly, the job posting for merit promotion to lieutenant, which is one of the new exhibits attached to the response brief, appears to have nothing at all to do with Watkins's claims. *See* Pl. Resp. Exh. J. There is no need to strike these exhibits and allegations, because the Court did not rely on them.

## IV. Conclusion

For the reasons discussed, the City's motion to dismiss is granted in part and denied in part. Watkins's disparate treatment claims based on the issuance of the 2008 CR and the 2014 suspension survive, as does her retaliation claim based on the 2014 suspension. The rest of her claims are dismissed. The City's motion to strike is denied.

The status hearing of June 6, 2018 is reset to June 19, 2018, at 9:15 a.m. The parties shall confer about the discovery plan going forward, and file a joint status report on June 15, 2018. At the status hearing, the Court will discuss the litigation plan with the parties.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 5, 2018